### SANTA FE ENERGY PRODUCTS COMPANY, Plaintiff– Appellant,

v.

### Todd R. McCUTCHEON, Acting Area Manager, State and Indian Program Audit Office for the Minerals Management Service of the United States Department of the Interior; Bruce Babbitt, Secretary of the United States Department of the Interior, Defendants–Appellees.

No. 95–1221.

United States Court of Appeals, Tenth Circuit.

April 10, 1996.

As Amended on Denial of Rehearing July 16, 1996.

John F. Shepherd (Jane L. Montgomery, with him on the brief), of Holland & Hart, Denver, Colorado, for Plaintiff–Appellant.

William B. Lazarus (Lois J. Schiffer, Assistant Attorney General, David W. Gehlert, Robert L. Klarquist, with him on the brief), Department of Justice (Peter J. Schaumberg and Geoffrey R. Heath, Office of the Solicitor, Department of the Interior), Washington, D.C., for Defendants–Appellees.

Before SEYMOUR, Chief Judge,
ALARCÓN * and LUCERO, Circuit Judges.

ALARCÓN, Circuit Judge.

This appeal presents the narrow question whether the district court erred by holding that the Appellee Minerals Management Service ("MMS" or the "Government") has authority under section 103(a) of the Federal Oil and Gas Royalty Management Act ("FOGRMA") to require the production of documents for an audit relating to the first arm's length sale of oil by a wholly owned affiliate of a federal lessee. We have jurisdiction to review the merits of this issue pursuant to 28 U.S.C. § 1291. We affirm because we conclude that section 103(a) requires the production of the documents sought by the MMS.

## I

The Congress has authorized the Department of Interior to enter into and to administer leases providing for the development of federal oil and gas resources. These leases are generally granted to "the highest responsible qualified bidder" after a public, competitive bidding process, and provide for payment of royalties calculated as a percentage of the "amount or value of the production saved, removed, or sold from the lease." 30 U.S.C. § 226(b)(1).

The FOGRMA authorized the Secretary of the Department of Interior ("Secretary") to develop a comprehensive system of royalty management. 30 U.S.C. §§ 1701–1705. The FOGRMA directs the Secretary to establish "a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest,

fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner." 30 U.S.C. § 1711(a). The FOGRMA further provides that the Secretary "shall audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted." 30 U.S.C. § 1711(c)(1). Congress enacted the FOGRMA to address serious deficiencies in the federal royalty management system which, according to the General Accounting Office, cost the federal government up to $500 million annually. 1982 U.S.Code Cong. & Admin.News 4269. The regulations implementing section 103 of the FOGRMA appear at 30 C.F.R. §§ 212.50–52. The Secretary has delegated responsibility for enforcing royalty payment obligations to the Director of the MMS. *See generally* 30 C.F.R. pt. 218 (1987); *Phillips Petroleum Co. v. Lujan,* 963 F.2d 1380, 1382 (10th Cir.1992).

Santa Fe Energy Resources, Incorporated ("Santa Fe") is the parent corporation of the two wholly owned subsidiary companies relevant to this appeal: Santa Fe Energy Resources Company ("Energy") and Appellant Santa Fe Energy Products Company ("Products"). Energy produces oil under federal leases located in the Midway–Sunset, Sespe, and North Kern fields in California for which it was the operator and designated payor during the relevant period in this matter, January 1, 1984, through June 30, 1987. Energy transfers most of the oil produced under these federal leases, in non-arm's length transactions, to its affiliate Products. Products then markets this oil to third party purchasers.

The California State Controller's Office, acting under a delegation of authority from the MMS, began an audit covering Energy's royalty payments from the federal leases for the period of January 1, 1984, through June 30, 1987. Because the inter-affiliate sales between Energy and Products were not arm's length transactions, the Government sought access to certain documents regard-

* Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

ing Products' subsequent sales to independent third parties. The Government demanded: "(1) all pertinent sales contracts and exchange agreements between [Products] and outside entities involving crude oil originating from leases operated by [Energy] in the Midway–Sunset, Sespe and North Kern Front fields;" and "(2) ledger entries and settlement statements supporting revenues received by [Products] for crude oil originating in the above fields." The Government contends that it requested these documents in order to establish whether Energy used proper values in computing royalties paid on oil sold to its affiliate. Products refused the Government's request.

On September 30, 1988, the Chief of the Office of State and Tribal Program Support of the MMS' Royalty Compliance Division in Lakewood, Colorado, issued an order to Products to provide access to the identified documents. Products appealed the order to the MMS Director. Because Products was not a party to the federal lease, and Energy had paid royalties at posted prices,[1] Products contended that the MMS lacked authority over it.

The Director of the MMS rejected Products' contentions and upheld the order stating:

> The issue in this case is whether the [Energy/Products] transfer, admittedly not at arm's length, represents fair market value. The request for information from [Products] was meant to ascertain that fact. The information concerning [Product's] arm's-length contracts would provide the needed comparison as to whether the non-arm's-length contract of [Energy] meets the appropriate criteria. Without the information requested from [Products], the State and MMS cannot make a reasonable determination as to the value of the crude oil for royalty purposes, since the lessee's

gross proceeds always is the minimum value. 30 C.F.R. 206.103 (1987).

The Director concluded that "[a] lessee cannot avoid [the gross proceeds] requirement by transferring production to an affiliate who then sells the production to third parties.[2] The latter sale by the affiliate established the proceeds accruing to the lessee."

The Director's decision was appealed to the Interior Board of Land Appeals ("IBLA"). The IBLA affirmed the Director's conclusion "that the [gross proceeds] rule provided MMS with authority to obtain records from any affected 'person' involved in purchasing or selling oil, and that the MMS was not limited to dealing with the signatory lessee concerned (Decision at 6)." The IBLA also agreed "that the obligation to report 'gross proceeds accruing to the lessee' cannot be avoided by an inter-affiliate transfer made in contemplation of a later sale to third parties."

Products petitioned for reconsideration, arguing that the IBLA erred when it made "a mistaken assumption on one key fact: that [Products] is an affiliate that only buys and markets Energy's oil production." The IBLA rejected as irrelevant Products' contention that it was not a "marketing affiliate" as defined in 30 C.F.R. § 206.151 (1992). Rather, the IBLA affirmed the MMS' finding that "transactions between affiliates such as took place in the instant case must be examined relative to arm's length transactions between the buyer and non-affiliated third parties." Section 206.151 was neither construed nor cited by the IBLA in its decision. Accordingly, Products' petition was denied.

On March 7, 1994, Products filed a complaint in the United States District Court for the District of Colorado seeking review of the IBLA's decision. On January 17, 1995, Products filed a motion for summary judgment. On February 16, 1995, the Government filed a cross-motion for summary judgment. The

---

1. Posted prices are defined as the "price specified in publicly available posted price bulletins, offshore or onshore terminal postings, or other price notices net of all adjustments for quality (e.g., API gravity, sulfur content, etc.) and location for oil in marketable condition." 30 C.F.R. § 206.101 (1994).

2. The gross proceeds rule governs the MMS' valuation of oil and gas produced under federal lease for the purpose of ensuring that the Government receives proper royalty payments. The rule has been promulgated at 30 C.F.R. § 206.103 (1987) and is analyzed in Part II of this opinion.

district court, on March 30, 1995, issued an order granting the Government's motion for summary judgment and denying Products' motion. The district court rejected Products' contention that "there is no authority holding sales by an affiliate of a lessee relevant to royalty valuation." The district court stated that "[a]dministrative agencies vested with investigatory power have broad discretion to require disclosure of information concerning matters within their jurisdiction." Pursuant to the gross proceeds rule, the court reasoned, the MMS may compute royalties based upon a value equal to "the estimated reasonable value of the product ... due consideration being given to the highest price paid ... and to other relevant matters. 30 C.F.R. § 206.103." The district court held that the IBLA did not err by concluding that "other relevant matters" could include the price paid on the first arm's length sale of oil produced under federal lease. Judgment was entered for the Government on April 4, 1995.

## II

■ We review "*de novo* the district court's grant of summary judgment." *Valley Camp of Utah, Inc. v. Babbitt,* 24 F.3d 1263, 1267 (10th Cir.1994). Our review of an agency's actions is "narrow," and "substantial deference [is] afford[ed] to the actions of administrative agencies in compliance with their statutory enforcement obligations." *Phillips Petroleum Co. v. Lujan,* 951 F.2d 257, 259 (10th Cir.1991). We will not set aside agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. § 706(2)(A)). "[I]n reviewing a district court's review of an agency decision, 'the identical standard of review is employed at both levels; and once appealed, the district court's decision is afforded no particular deference.' " *Valley Camp of Utah, Inc.,* 24 F.3d at 1267 (citation omitted).

■ Products first contends that the district court's failure to apply the royalty regulations set forth at 30 C.F.R. § 206.102(c) (1988) constituted error. Products' contention is without merit. The district court correctly held that section

206.102(c) does not apply to this matter. Section 206.102(c) did not become effective until March 1, 1988. This action concerns the period from January 1, 1984, through June 30, 1987. The 1988 royalty regulations do not apply retroactively. *See Exxon Co., U.S.A.,* 128 I.B.L.A. 22, 24 (1993) ("the 1988 royalty regulations were specifically made to apply 'prospectively to gas production on or after [Mar. 1, 1988]' ") (citation omitted); 53 F.R. 1184, 1230, 1988 WL 278009 (Jan. 15, 1988) ("[t]hese regulations will apply prospectively to gas production on or after the effective date specified in the DATES section of this preamble"). The MMS' construction of its own regulations should be afforded great deference. *See Thomas Jefferson University v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) ("[w]e must give substantial deference to an agency's interpretations of its own regulations"). Both the district court and the IBLA correctly declined to apply the 1988 regulatory revisions to this matter.

■ Products next asserts that the district court's decision should be reversed because it erroneously concluded that Products' oil sales are relevant to the Government's valuation of royalties. Products argues that the documents ordered are irrelevant because they relate to transactions after the proper point of royalty computation—the sale from the lessee, Energy, to Products. Moreover, Products contends that there is no authority holding sales by an affiliate of a lessee relevant to royalty valuation.

Section 103(a) of the FOGRMA, the record production provision, provides that:

A lessee, operator, or *other person* directly involved in developing, producing, transporting, purchasing, or selling oil or gas subject to this chapter through the point of first sale or the point of royalty computation, whichever is later, shall establish and maintain any records, make any reports, and provide any information that the Secretary may, by rule, reasonably require for the purposes of implementing this chapter or determining compliance with rules or orders under this chapter. Upon the request of any officer or employee duly des-

ignated by the Secretary or any State or Indian tribe conducting an audit or investigation pursuant to this act, the appropriate records, reports, or information which may be required by the section shall be made available for inspection and duplication, by such officer or employee, State, or Indian tribe.

30 U.S.C. § 1713(a) (emphasis added). Congress defined "person" for purposes of the FOGRMA as "any individual, firm, corporation, association, partnership, consortium, or joint venture." 30 U.S.C. § 1702(12). Section 1713(a) empowers the MMS to require Products to establish, maintain, and make available for inspection the documents requested in this case. Products was the first purchaser of oil produced by Energy under a federal lease. Accordingly, Products was a "person directly involved in ... purchasing ... oil or gas subject to this chapter through the point of first sale or royalty computation." Therefore, Products was required to "establish and maintain any records, make any reports, and provide any information that the Secretary may, by rule, reasonably require for the purposes of implementing this chapter or determining compliance with rules or orders under this chapter."

■ The MMS has the authority to require Products to produce documents "relevant" to oil sales, where such documents are reasonably required to implement royalty valuation pursuant to the gross proceeds rule. The gross proceeds rule, the rule relevant to the period of production in this matter, provides:

The value of production, for the purpose of computing royalty, shall be the estimated reasonable value of the product as determined by the Associate Director due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field, to the price received by the lessee, to posted prices, and *to other relevant matters*. Under no circumstances shall the value of production of any of said substances for the purposes of computing royalty be deemed to be less than the gross proceeds accruing to the lessee from the sale thereof or less than the value computed on such

reasonable unit value as shall have been determined by the Secretary.

30 C.F.R. § 206.103 (1987) (emphasis added).

Products contends that the point of royalty computation is the sale between Resources and Products, not between Products and third parties, because "nothing in the pre-1988 regulations remotely suggested that the sale by a lessee to an affiliate could be disregarded for royalty purposes." Products, however, concedes in its opening brief that the pre–1988 regulations provide "little or no guidance on the point of royalty computation for oil sold to an affiliate." The MMS argues that nothing in the gross proceeds rule or any other provision limits the point of royalty computation to the first sale of the leased product. Rather, the MMS maintains that the royalty value is "the estimated reasonable value of the product as determined by the [MMS] Associate Director due consideration being given to the highest price paid ... and to other relevant matters." Under the gross proceeds rule, the MMS could reasonably require information relating to Products' sales in order to ascertain the oil's fair market value and to determine the gross proceeds accruing to Energy. *See Thomas Jefferson University,* —— U.S. at ——, 114 S.Ct. at 2386 (the court accords substantial deference to an agency's reasonable interpretations of its own regulations).

■ Products' resale records constituted "records necessary to demonstrate that payments of rentals, royalties, net profit shares, and other payments related to offshore and onshore Federal and Indian oil and gas leases are in compliance with lease terms, regulations and orders." 30 C.F.R. § 212.51(a) (1984). Moreover, an administrative agency's authority to request records and undertake other investigatory functions is extremely broad. *See United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950) (restating the breadth of an agency's ability to gather information which is analogous to a Grand Jury's power to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not").

The MMS' determination that the first arm's length sale of oil produced under a

federal lease was covered by the "other relevant matters" language of its regulations was not arbitrary, capricious, or contrary to law.

The IBLA's determination that section 103(a) of FOGRMA requires Products to produce documents relating to its arm's length sales of oil received from Energy was not arbitrary, capricious, or contrary to law. The district court's order granting the Government's motion for summary judgment and denying Products' motion for summary judgment was proper and is AFFIRMED.