**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

**Patrick Fisher**                                                                                    **Elisabeth A. Shumaker**
**Clerk**                                                                                                       **Chief Deputy Clerk**


May 24, 1996


**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:**    95-9513, Washington v. DOT
            April 23, 1996 by Judge Barrett


        The Court has granted the motion to publish its decision filed April 23, 1996.
Attached is the published version.


                                                Very truly yours,

                                                Patrick Fisher,
                                                Clerk

                                                By:

                                                Theresa Smith
                                                Deputy Clerk


        Attachments

PUBLISH

_____

FILED 4/23/96
UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

WILLIAM E. WASHINGTON,                    )
                                          )
        Petitioner,                       )
                                          )
v.                                        )     No. 95-9513
                                          )
DEPARTMENT OF TRANSPORTATION, NATIONAL     )
HIGHWAY TRANSPORTATION SAFETY              )
ADMINISTRATION,                           )
                                          )
        Respondents.                      )

_____

PETITION FOR REVIEW FROM
UNITED STATES DEPARTMENT OF TRANSPORTATION,
NATIONAL HIGHWAY TRANSPORTATION SAFETY ADMINISTRATION
(No. 0090-0)
_____

On the Briefs:

John Womack, Acting Chief Counsel, Kenneth N. Weinstein,
Assistant Chief Counsel, Enid Rubenstein and Coleman R.
Sachs, National Highway Traffic Safety Administration;
Barbara C. Biddle and Robert M. Loeb, Department of Justice,
Washington, D.C., for respondents.

William E. Washington, Pro Se.

_____

Before KELLY and BARRETT, Circuit Judges, and BROWN,** Senior
District Judge.

_____

**BARRETT**, Senior Circuit Judge.

_____

**Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

_____


After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. Accordingly, petitioner's motion for oral argument is denied and the case is ordered submitted on the briefs.

Petitioner seeks review of a rule recently promulgated by respondent National Highway Traffic Safety Administration (NHTSA), see 49 C.F.R. § 571.121, which mandates and prescribes safety standards for antilock brake systems (ABS)

manufactured for air-braked vehicles.[1] We reject petitioner's various challenges to the rule for the reasons stated below.

Petitioner contends (1) the rule reflects NHTSA's deliberate attempt to exclude all but electronic ABS designs; (2) the rule impermissibly conflicts with operational standards established in 49 C.F.R. § 393.52 for commercial motor carriers; (3) the rule exceeds NHTSA's delegated authority by imposing design specifications rather than performance criteria; (4) NHTSA failed to evaluate and disclose information regarding petitioner's mechanical alternative to electronic ABS; and (5)NHTSA published false statistical data in connection with its denial of petitioner's request for evaluation of his technology. All of these contentions lack even rudimentary substantiation in factual argument and legal authority. See generally United States v. Edwards, 69 F.3d 419, 430 (10th Cir. 1995), petition for cert. filed, 64 U.S.L.W. 3593 (U.S Feb. 23, 1996)(No. 95-1355), (Feb. 29, 1996)(No. 95-8147), (Mar. 4, 1996)(No. 95-8134); SEC

---

[1] To the extent petitioner objects to the denial of his request for rulemaking in 1992, we agree with respondents that the petition is untimely. See 15 U.S.C. § 1§ 1394(a)(1) (establishing fifty-nine day period for seeking judicial review of motor vehicle safety standards, now codified at 49 U.S.C. § 30161(a)); see also General Motors Corp. v. NHTSA, 898 F.2d 165, 169 (D.C. Cir. 1990)(refusal to institute requested rulemaking constitutes final agency action for purposes of judicial review).

<u>v. Thomas</u>, 965 F.2d 825, 827 (10th Cir. 1992).  Nevertheless, we shall address the discernible questions regarding NHTSA's regulatory authority implicated in the second and third points listed above.  In this regard, we must determine whether the challenged action is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 41 (1983)(quoting 5 U.S.C. § 706(2)(A));  <u>Simms v. NHTSA</u>, 45 F.3d 999, 1003 (6th Cir. 1995).

Section 393.52 specifies braking performance criteria for vehicles operated by commercial carriers on public highways.  Petitioner objects that "[t]he rule change made by the Respondents [in § 571.121] cannot meet these requirements," Petitioner's Opening Br. at 4, though he does not detail how or why this is so.  We note that the various stopping distances set out in the two regulations, though very similar, are not in every case identical.  <u>Compare, e.g.,</u> § 393.52(d)(B)(3)(40-foot stopping distance at 20 mph)  <u>with</u> § 571.121 S5.3.1.1 (eff. March 1, 1997)(same)  <u>with</u> § 571.121 S3.1.1 (eff. until March 1, 1997)(35-foot stopping distance).  However, given evident (and reasonable) differences in the general orientation and specific focus of the two regulations, such divergence does not indicate true

conflict, much less arbitrary, capricious, or unlawful action.

With respect to orientation, the motor carrier regulation concerns operational standards for vehicles in broadly defined real-world conditions, see § 393.52(a), (c)(1)(vehicle "must under any condition of loading in which it is found on a public highway, be capable of" stopping in specified distance on "a hard surface that is substantially level, dry, smooth, and free of loose material"), while the NHTSA regulation involves standards for manufacture expressed in a manner more appropriate to the quality control lab, see § 571.121 S5.3.1, S5.3.1.1 (eff. until March 1, 1997)(vehicle "shall stop at least once [in six tries] in . . . the distance specified" when tested "on a surface with a skid number of 81 . . . [while] loaded to its gross vehicle weight rating"); § 571.121 S5.3.1, S5.3.1.1 (eff. March 1, 1997)(same, but on surface characterized by "a peak friction coefficient of 0.9").  As for focus, the motor carrier regulation, which covers braking performance per se, sets out a standard concerned primarily with stopping distance, with only a broad requirement that the vehicle remain within a twelve-foot wide lane, see § 393.52(a), (c), while the NHTSA regulation, which targets the ABS portion of the brake system, employs stopping distance tests as the context for detailing standards

regarding wheel lockup, <u>see</u> § 571.121 S5.3.1. Given the related but distinct test parameters and divergent performance variables involved in these regulations, the minor differences apparent in their stopping-distance standards are neither surprising nor suspect.

NHTSA is generally charged with developing performance standards, not design specifications. <u>Wood v. General Motors Corp.</u>, 865 F.2d 395, 416-17 (1st Cir. 1988), <u>cert. denied</u>, 494 U.S. 1065 (1990); <u>Chrysler Corp. v. Department of Transp.</u>, 515 F.2d 1053, 1057-58 (6th Cir. 1975). Petitioner contends NHTSA's mandate of ABS and associated malfunction indicators transgresses this boundary on its regulatory authority. Although we do not take issue with petitioner's premise, we reject his conclusion for several reasons.

First of all, the performance-design distinction is much easier to state in the abstract than to apply definitively--so as to justify judicial interference with an agency's regulatory function--in concrete situations. This is particularly true when, due to contingent relationships between performance requirements and design options, specification of the former effectively entails, or severely constrains, the choice of the latter. <u>See</u> <u>Wood</u>, 865 F.2d at 416-17 (citing examples); <u>see, e.g.</u>, <u>Chrysler Corp.</u>, 515 F.2d at 1058-59. Such a relationship has been recognized between

-6-

braking performance criteria and ABS. See Freightliner Corp. v. Myrick, 115 S. Ct. 1483, 1486 (1995). We would, accordingly, be hesitant to invalidate this carefully developed safety standard solely on the basis of its indefinite place on the conceptual spectrum between performance and design. Here, other considerations counsel against such action as well.

NHTSA's regulatory authority extends beyond the performance of motor vehicles per se, to particular items of equipment. See 49 U.S.C. §§ 30101, 30102(a)(9) (current versions of 15 U.S.C. §§ 1381, 1391(2), now repealed); Myrick, 115 S. Ct. at 1485. In the thirty years since passage of the National Traffic and Motor Vehicle Safety Act of 1966, NHTSA has frequently drawn on this authority to promulgate standards, particularly those dealing with safety devices, that take the bipartite form reflected in the ABS standard of § 571.121: "first, motor vehicles are required to have specific items of equipment; and, second, these enumerated items of equipment are subject to specific performance standards." Chrysler Corp. v. Rhodes, 416 F.2d 319, 322 & n.4 (1st Cir. 1969)(discussing standards for lamps and reflective devices, which require 29 and 22 "specific items of equipment," respectively); see also Wood, 865 F.2d at 417 (discussing occupant protection standard which, "[b]y

-7-

requiring seat belts or passive restraints, . . . has elements of a design standard"); <u>Automotive Parts & Accessories Ass'n v. Boyd</u>, 407 F.2d 330, 332 (D.C. Cir. 1968)(upholding regulation requiring "factory- equipped . . . head restraints which meet specific federal [performance] standards"). Not only has Congress countenanced this long-standing practice, recodifying the Act in 1994 with the pertinent provisions essentially intact, it has specifically mandated safety equipment standards with just such a dual prescriptive-performative structure. <u>See, e.g.,</u> 49 U.S.C. § 30127(b)(directing Secretary to amend occupant protection standard to require both front seats to have "an inflatable restraint (with lap and shoulder belts) complying with [specified performance criteria]").

Moreover, the policy behind the legislative emphasis on performance standards, which is to ensure public safety without stifling design innovation, <u>Wood</u>, 865 F.2d at 416 n.22; <u>Chrysler Corp.</u>, 515 F.2d at 1058, is not compromised significantly by a safety-feature regulation like § 521.171. This provision mandates only a certain <u>type</u> of equipment,[2]

---

[2]    ABS is broadly defined--and in predominately functional, rather than structural, terms--as "a portion of a service brake system that automatically controls the degree of rotational wheel slip at one or more road wheels of the vehicle during braking."  49 C.F.R. § 571.121 S4 (eff. until March 1, 1997); <u>see also</u> 49 C.F.R. § 571.121 S4 (eff. March 1, 1997)(adding further functional detail to definition).

still constraining specific design choices chiefly through the preferred means of performance criteria. Further, any manufacturer that has devised a new means of obtaining the same or better safety performance afforded by mandated equipment may (1) seek an exemption to facilitate development or evaluation, 49 U.S.C. § 30113(b)(3)(B)(ii), and (2) petition for a new safety standard incorporating the new device, 49 U.S.C. § 30162(a)(1).[3]

We have considered all of petitioner's contentions and, whether explicitly addressed or implicitly rejected, each has been found to lack merit. The petition for review, and all pending motions associated therewith, are DENIED.

-------

[3] We note our treatment of the performance-design distinction is impliedly buttressed by this affirmative accommodation of "new motor vehicle safety feature[s] providing a safety level <u>at least equal to the safety level of the [existing] standard</u>." 49 C.F.R. § 30113(b)(3)(B)(ii)(emphasis added). If, as petitioner contends, Congress intended its emphasis on performance criteria to preclude NHTSA's mandate of particular safety features, no special exemption would be necessary for a new device <u>meeting</u> existing (purely performative) standards; such an exemption becomes necessary when existing standards mandate a particular type of equipment (a mandate even a performative equivalent cannot meet).