**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 30 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MT. EMMONS MINING COMPANY,
a corporation,

Plaintiff-Appellant,

v.

BRUCE BABBITT, Secretary of the
United States Department of Interior,
DEPARTMENT OF INTERIOR, and
BUREAU OF LAND
MANAGEMENT,

Defendants-Appellees.

No. 96-1230

---

Appeal from United States District Court
for the District of Colorado
(D.C. No. 94-Z-2978)

---

Stephen D. Alfers, Alfers & Carver, of Denver, Colorado (Bruce C. Kirchhoff,
Alfers & Carver, of Denver, Colorado; Don H. Sherwood, Parcel, Mauro, Hultin
& Spaanstra, P.C., of Denver, Colorado; and John R. Henderson, Vranesh &
Raisch, LLC, of Boulder, Colorado, with him on the brief), for the appellant.

Robert H. Oakley, U.S. Department of Justice, Environment & Natural Resources
Division (Gerald S. Fish, U.S. Department of Justice, Environment & Natural
Resources Division; Lois J. Schiffer, Assistant Attorney General; and Karen
Hawbecker, Office of the Solicitor, with him on the brief), of Washington, D.C.,
for the appellees.

---

Before EBEL, HENRY, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Mt. Emmons Mining Company (Mt. Emmons) appeals from the district court's order granting summary judgment in favor of defendant Bruce Babbitt, Secretary of the Interior, (Secretary) in Mt. Emmons' action to compel the Secretary to continue processing its application for several mining patents covering ten lode mining claims in Gunnison, Colorado. The district court found as a matter of law that the Secretary could not further process the patent application because of a congressionally-imposed moratorium. We have jurisdiction under 28 U.S.C. § 1291. We reverse and find that the Secretary has unlawfully withheld agency action in refusing to continue processing Mt. Emmons' application.

I.

On December 30, 1992, Mt. Emmons filed a patent application for ten lode mining claims with the Colorado office of the Bureau of Land Management (BLM). On March 2, 1993, the Secretary revoked the authority of subordinate

-2-

officials to issue "first half final certificates" (FHFC's)[1] and patents. Append. I at 25. Nevertheless, patent applications were processed initially in state BLM offices until they reached the point where the issuance of an FHFC would be the next step. After review by the proper state director, the application, together with (1) a cover memo with concurrence lines, (2) an FHFC prepared for the Secretary's signature, and (3) various documents from the case file, were to be sent to the Regional Solicitor's office, then to the Solicitor, then to the Director, then to the Assistant Secretary of Land and Minerals Management, and if all concurred, then to the Secretary. The final review process for issuance of a patent follows a similar chain of command.

Richard Tate, the senior land law examiner for the Colorado BLM office, completed his review of Mt. Emmons' application and, on September 15, 1994, wrote to Mt. Emmons requesting payment of $875 for purchase of the lands subject to the patent application. Mt. Emmons immediately tendered payment. On September 19, 1994, BLM accepted payment and on a "Receipt and

---

[1] On its face, the FHFC certifies a patent "may issue if all is found regular and upon demonstration and verification of a discovery of a valuable mineral deposit." Append. I at 88. According to the BLM Manual H-3860-1, ch. VI, pp. VI-1 and -2, the FHFC "[c]ertifies that the applicant has satisfactorily complied with all of the 'paperwork' requirements of the Mining Law (title, proofs, posting requirements, purchase money)." On appeal, the Secretary concedes "the signing of the FHFC establishes only that the applicant has submitted the appropriate filing fees, affidavits, and necessary documents, and has submitted the purchase prices." Appellees' br. at 11 n.5.

Accounting Advice," Tate marked "mineral entry allowed."  Append. I at 128.

Tate prepared the application to be sent to the Regional Solicitor's office, the next

level of the review process leading up to issuance of a first half final certificate

by the Secretary.

On September 30, 1994, Congress enacted the Department of Interior and

Related Agencies Appropriations Act, PL 103-332, 108 Stat. 2499, § 112, which

placed a moratorium on the expenditure of funds by the Department of Interior for

processing mining or millsite patent applications and issuing patents under the

general mining laws "[i]f the House-Senate Committee on H.R. 322 fails to report

legislation which is enacted prior to the adjournment of the 103d Congress *sine*

*die*."[2]  Congress also provided an exemption for certain patent applications in §

113 of the legislation:

> The [moratorium] provisions of section 112 shall not apply if the
> Secretary of the Interior determines that, for the claim concerned (1) a
> patent application was filed with the Secretary on or before the date of
> enactment of this Act, and (2) all requirements established under sections
> 2325 and 2326 of the Revised Statutes (30 U.S.C. 29 and 30) for vein or
> lode claims . . . were fully complied with by the applicant by that date.[3]

By Instruction Memorandum (IM) No. 95-01 dated October 4, 1994, the Secretary

adopted the following interpretation of § 113:

---

[2]  The committee failed to report the legislation prior to adjournment.

[3]  The moratorium provisions remain in effect through fiscal year 1997.  PL 104-208, 110 Stat. 3009, Omnibus Appropriations Act 1997, § 314(a)-(b).

Only the following applications may be processed:
(1) Those for which a FHFC was signed before October 1, 1994 and;
(2) those for which a FHFC was pending in Washington, D.C., as of September 30, 1994.

Tate retained Mt. Emmons' application in the Colorado BLM office. Mt. Emmons subsequently requested that its application be forwarded to Washington, D.C. Tate responded that local BLM officials no longer had authority to sign final certificates and, under the Secretary's interpretation of the moratorium, Mt. Emmons' application could not be processed further. It is undisputed that no FHFC was issued and that the application was not forwarded to Washington, D.C.

On December 30, 1994, Mt. Emmons filed the complaint in this action, seeking to compel the Secretary to continue processing its application. The complaint sought relief under the Administrative Procedure Act (APA), 5 U.S.C. § 706, mandamus, and declaratory judgment. Mt. Emmons filed a motion for discovery on June 7, 1995. The Secretary filed a motion for summary judgment, arguing he lacked authority to process Mt. Emmons' application. The Secretary argued to the district court, as he urges on appeal, that his construction of the scope of the § 113 exemption is a reasonable construction and is entitled to judicial deference.

Mt. Emmons filed a Rule 56(f) motion for a continuance pending discovery. Mt. Emmons argued that, despite the Secretary's explanation of his treatment of the application, discovery was needed to determine the Secretary's

"contemporaneous construction of IM 95-01." Mt. Emmons further argued its claim for unreasonably delayed agency action prior to the effective date of the moratorium required discovery into the reasons for that delay. The magistrate judge found the only determinative issues in the case dealt with the Secretary's interpretation of § 113 and, thus, discovery was not needed. The magistrate recommended that summary judgment be rendered in favor of the Secretary. The magistrate specifically held that Mt. Emmons was not entitled to an exception to the moratorium under § 113 because (1) an FHFC had not been issued to Mt. Emmons before October 1, 1994, and (2) its patent application had not been forwarded to Washington, D.C., and therefore was not "filed with the Secretary on or before the enactment of the Act" as required by § 113. The district court agreed and granted summary judgment on the basis that the moratorium prevented the Secretary from processing the patent application and that the § 113 exemption did not apply under the Secretary's interpretation of that exemption in IM 95-01.

II.

Mt. Emmons raises two issues on appeal: (1) whether the Secretary's refusal to continue processing its patent application violates § 113; and (2) whether the district court erred in refusing to permit Mt. Emmons to conduct discovery prior to granting summary judgment in favor of the Secretary.

-6-

Under the APA, 5 U.S.C. § 706(2)(A), as a reviewing court, we must set aside the Secretary's action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  See Washington v. Department of Transp., 84 F.3d 1222, 1224 (10th Cir. 1996); Osborne v. Babbitt, 61 F.3d 810, 812 (10th Cir. 1995).  Moreover, as a reviewing court, we must "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The availability of a remedy under the APA technically precludes Mt. Emmons' alternative request for a writ of mandamus, Western Shoshone Business Council v. Babbitt, 1 F.3d 1052, 1059 (10th Cir. 1993), although the mandatory injunction is essentially in the nature of mandamus relief, Estate of Smith v. Heckler, 747 F.2d 583, 591 (10th Cir. 1984).  Consequently, we must determine whether the Secretary's refusal to continue processing Mt. Emmons' application unlawfully withholds agency action.  Our review of the administrative record is de novo and we accord no deference to the district court.  Santa Fe Energy Products Co. v. McCutcheon, 90 F.3d 409, 413 (10th Cir. 1996).

The question of whether the Secretary, through IM 95-01, lawfully applied the moratorium to Mt. Emmons' patent application requires us to interpret § 113 and apply it to the facts presented.  If a statute is clear and unambiguous, the court must interpret the statute to effect the unambiguous intent of Congress, regardless of the interpretation given to the statute by an administrative agency

-7-

with responsibility for enforcement. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984); Wyoming v. Alexander, 971 F.2d 531, 535 (10th Cir. 1992). "[W]hen a court is reviewing an agency decision based on a statutory interpretation, 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" National R.R. Passenger Corp. v. Boston and Maine Corp., 503 U.S. 407, 417 (1992) (quoting Chevron, 467 U.S. at 843). "[A]n agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning the statute can bear." MCI Telecommunications Corp. v. American Tel. & Tel. Co., 512 U.S. 218, 229 (1994). Therefore, no deference is due an agency interpretation which fails to incorporate the plain meaning of the statute. Public Employees Retirement System of Ohio v. Betts, 492 U.S. 158, 171 (1989). Similarly, a reviewing court need not accept agency interpretations which "frustrate the policy that Congress sought to implement." Securities Industry Ass'n v. Board of Governors of Federal Reserve System, 468 U.S. 137, 143 (1984).

Our initial inquiry is whether the § 113 moratorium exemption is ambiguous. Under § 113, two requirements must be met before the exemption applies. First, the application must be filed with the Secretary on or before the date of enactment of the moratorium. The Secretary concedes on appeal that Mt.

Emmons satisfied this requirement when it filed its application with a state BLM office.[4] Thus, the Secretary does not assert that ambiguity in this provision justifies his interpretation of the statute. The second prerequisite to qualify for an exemption is that all requirements of 30 U.S.C. §§ 29 and 30 "were fully complied with by the applicant" by the date of enactment of the moratorium. We have held that an applicant meets its obligations under § 29[5] when it files all necessary papers required to process the application, and that from that point forward complete responsibility lies with the Secretary. Marathon Oil Co. v. Lujan, 937 F.2d 498, 500-501 (10th Cir. 1991). The Secretary argues ambiguity in this second provision requires this court to defer to the Secretary's interpretation as expressed in IM 95-01. The Secretary argues the second provision is inconsistent with the moratorium itself in that it would require the Secretary to process the patent application, for which he cannot use appropriate funds, to determine whether the exemption applies. The Secretary concludes at one point in his brief that Congress intended only some ambiguous limited review of an applicant's compliance with the mining laws. The Secretary's argument

_____

[4] The Secretary acknowledges that the reasoning of the district court is flawed in holding the Secretary's requirement that the application be in Washington, D.C. is based on the statutory requirement that the application be filed with the Secretary. The Secretary acknowledges that applications filed in state BLM offices are filed with the Secretary. Appellees' br. at 27.

[5] Section 30 is not at issue in Mt. Emmons' patent claim; therefore, the focus is only on compliance with § 29.

ignores the fact that Congress has explicitly defined the content of the limited review permitted under the moratorium--the applicant's compliance with the paper requirements for a patent application. Thus, the provision is not ambiguous but clearly *requires* the Secretary to determine eligibility of pending applications for FHFC's--that is, whether the application is complete in that the applicant has complied with all requirements for *applying for* a patent. Cf. R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061 (9th Cir. 1997) (application is not "complete" so as to qualify for continued processing under § 113 if purchase price is not paid).

Even if we were to accept his argument that the statute is in some respects ambiguous, the Secretary's position would not be much aided. In the event of ambiguity, the Secretary's interpretation must be reasonable in order to be entitled to deference. As Mt. Emmons argues, the Secretary's interpretation is contrary to the language of § 113. The Secretary bases an applicant's eligibility for exemption on how far *the Secretary* has processed the application (whether an FHFC was signed or transmitted to the BLM office in Washington, D.C.), while § 113 clearly and unequivocally bases the applicant's eligibility only on *the applicant's* actions (compliance with 30 U.S.C. §§ 20 and 30).[6]

_____

[6] Further support for Mt. Emmons' position that the Secretary's interpretation of the scope of the exemption is unreasonable is found in the language of a similar moratorium exemption passed by Congress on oil shale patent applications in 1991. That act explicitly provided the moratorium applied "unless the holder of a valid oil shale mining claim has received first half final certificate for patent by date of enactment of this

(continued...)

-10-

Although the Secretary is free to adopt a reasonable interpretation of an ambiguous statute, he is not free to disregard an unambiguous aspect of the statute to clarify and effect an ambiguous one. The moratorium provisions contain no ambiguity to permit the Secretary's interpretation of the scope of the § 113 exemption.

The Secretary's argument on appeal that he cannot expend funds to determine whether an application filed before enactment of the moratorium is complete or to determine whether the application is entitled to an FHFC is inconsistent with his own interpretation of §§ 112 and 113. Under the Secretary's IM 95-01, applications without FHFC's (and which might ultimately be determined to be ineligible for FHFC's) can continue to be processed if they are physically located in Washington, D.C. The Secretary's distinction based on the physical location of the application package is unreasonable and impermissible in light of the statute's focus on *the applicant's* compliance as the determining factor for eligibility for the exemption.

The Secretary is unable to support his position with any language in the moratorium statute. He attempts to justify his construction by reference to the legislative history of the moratorium, pointing out there is history supporting the

---

[6](...continued)
Act." PL 102-154, 105 Stat. 990 (1991). Congress did not use this same language with explicit reference to the receipt of an FHFC in § 113. Had Congress intended to adopt the Secretary's rule, it clearly knew how to do so.

view that the exemption would exempt those classifications of applications identified in IM 95-01:

> The managers agree that those applications having received first-half-final certificates on or before the date of enactment of this Act are not subject to the prohibition in Section 112. In addition, the managers agree that those applications for first-half-final certificates currently pending in the Office of the Solicitor in Washington, D.C. or elsewhere in the Department of the Interior in Washington, D.C. will not be subject to the moratorium in Section 112.

140 Cong. Rec. H9536-01 (1994).

In the absence of ambiguity requiring clarification, there is no need to resort to the legislative history. See United States v. Gonzales, 117 S. Ct. 1032, 1035 (1997). The ambiguity identified by the Secretary in his brief comes not from the moratorium statute but from an overly broad paraphrase of the language of § 113 in the legislative history itself--that § 113 requires a determination of entitlement to a patent rather than compliance with the paper requirements of 30 U.S.C. § 29 in the application. H.R. Rep. 103-740, at 37. Moreover, the excerpt from the legislative history is not tied to any specific language in the moratorium statute and does not plainly support the Secretary's construction of the moratorium. While it may indicate an intent that applications with signed or pending FHFC's in Washington, D.C. would be exempt from the moratorium, it does not indicate that *only* those applications would be exempt, which is the position the Secretary has adopted. The legislative history is still more uncertain

as it contains expressions elsewhere that § 113 was intended to exempt from the moratorium any pending application *entitled* to an FHFC. H.R. 103-551. This is exactly the determination Mt. Emmons seeks and the Secretary refuses.

The Secretary argues in part that the statute is ambiguous, but more importantly he argues it is silent on the important question of how he is to decide whether an applicant is eligible for the moratorium exemption. The Secretary argues Congress left the mechanism for determining eligibility to him and he could therefore adopt the two-part test in IM 95-01. While the Secretary is indeed free to implement an internal procedural mechanism of his own choice to determine exemption eligibility,[7] he is not free to change the standard for qualifying for the exemption by selection of one mechanism over another to exclude from the exemption applications Congress had chosen under the language of the statute to include. Yet this is what the Secretary has done through IM 95-01 by refusing to determine whether applications filed before enactment of the moratorium but not yet forwarded to Washington, D.C., qualify for the exemption.

The Secretary also argues an applicant has not complied with the responsibility to file a complete application as contemplated by § 113 until he decides the application is complete. He argues Mt. Emmons is not qualified for

---

[7] Section 113 says only "if the Secretary of Interior determines," without specifying the mechanism the Secretary must use.

the exemption until and unless the Secretary makes a final determination that Mt. Emmons is entitled to an FHFC, which he has not done and will not do as long as the moratorium is in effect. The Secretary's circular argument again ignores the emphasis of § 113 on the applicant's actions rather than the Secretary's actions, and ignores the duty Congress places on the Secretary to determine if the application is complete so as to qualify for the exemption.

Finally, the Secretary argues Mt. Emmons is not entitled to compelled agency action because it is not unquestionably entitled to a patent. The Secretary misconstrues the relief which Mt. Emmons seeks. Mt. Emmons seeks an order requiring the Secretary to continue to process its patent application. This relief is appropriate without regard to Mt. Emmons' ultimate entitlement to a patent. See Marathon Oil, 937 F.2d at 500.

## III.

The district court's order granting summary judgment in favor of the Secretary is REVERSED. The Secretary is ordered to continue processing Mt. Emmons' patent application to determine whether it is sufficiently complete to qualify for the § 113 exemption as interpreted herein. Given our interpretation of § 113, the question of whether Mt. Emmons should have been permitted discovery

before entry of summary judgment is moot. Both of Mt. Emmons' motions to supplement the record are DENIED.