FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 1, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

WYO-BEN, INC., a Montana corporation,

    Petitioner - Appellant,

v.

DOUGLAS J. BURGUM, an individual, in
his official capacity as Secretary of the
United States Department of Interior;
STEVAN PEARCE, an individual, in his
capacity as Director of the United States
Bureau of Land Management,[*]

    Respondents - Appellees.

No. 25-8008
(D.C. No. 2:19-CV-00215-ABJ)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[**]

_____

Before **MORITZ** and **FEDERICO**, Circuit Judges, and **ALLEN**, District Judge.[***]

_____

    Petitioner-Appellant Wyo-Ben, Inc. ("Wyo-Ben"), appeals from the district

court's denial of its petition[1] under 5 U.S.C. § 706(1) seeking to compel

---

    [*] Pursuant to Fed. R. App. P. 43(c)(2), Stevan Pearce is automatically substituted for Jon Raby in this appeal.

    [**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [***] The Honorable Ann Marie McIff Allen, U.S. District Judge, District of Utah, sitting by designation.

    [1] Although the pleading is styled as a "Complaint," *see* Aplt. App. I at 9, the parties refer to one another (and the district court referred to them) as Petitioner and Respondent. For the sake of clarity, we use this same nomenclature and, consequently, refer to the Complaint as a "petition."

Respondents-Appellees, the Secretary of the Interior (the "Secretary") and the Director of the Bureau of Land Management ("BLM"), to review an application for a mineral patent, which Wyo-Ben filed over thirty years ago.  *See* Aplt. App. I at 9–13. This case is before this Court following a previous order of remand, in which a prior panel determined that Wyo-Ben had presented one potentially timely claim to the district court.  *See Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 881 (10th Cir. 2023). Specifically, while the record clearly showed that BLM had acted on Wyo-Ben's mineral-patent application in 1994, Wyo-Ben argued BLM had not acted pursuant to a proper delegation of authority from the Secretary and, consequently, the record before the prior panel did not reveal whether the <u>Secretary</u> had ever acted on Wyo-Ben's application.  *Id.* at 868.  Accordingly, the prior panel concluded Wyo-Ben's claim against the Secretary was potentially timely under the repeated-violations doctrine.  *See id.* at 875.  In reviewing the proceedings in the district court following remand, it is now clear that Wyo-Ben's only remaining claim is also untimely because BLM acted pursuant to authority lawfully delegated from the Secretary when it acted on Wyo-Ben's application in the 1990s.  Consequently, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

In March 1993,[2] Wyo-Ben filed the mining-patent application at issue, seeking a patent for 294 contiguous placer claims spanning over 7,000 acres in Big Horn

---

[2] The date of filing is notable given certain legal developments occurring at that time.  For over 100 years, the Mining Law of 1872 allowed U.S. citizens to

County, Wyoming. Aplt. App. III at 2–11, 32–55. Then, on September 30, 1994, while Wyo-Ben's application was still pending, Congress enacted a moratorium pausing the processing of mineral-patent applications. *See* Department of the Interior and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-332, § 112, 108 Stat. 2499, 2519 (1994). Congress also enacted an exemption to that moratorium, which applied "if the Secretary of the Interior determines that, for the claim concerned: (1) a patent application was filed with the Secretary on or before the date of enactment of this Act, and (2) all requirements established under [applicable statutes] . . . were fully complied with by the applicant by that date." *Id.* § 113.[3]

On October 4, 1994, and in light of this statutory change, BLM issued Instruction Memorandum No. 95-01 ("IM 95-01"), which instructed BLM to stop accepting new mineral-patent applications. Aplt. App. IV at 23. As to pending applications, IM 95-01 stated, "[o]nly the following applications may be processed:

(1) Those for which a FHFC[4] was signed before October 1, 1994; and
(2) those for which a FHFC was pending in Washington, D.C. as of September

---

purchase, at the cost of five dollars per acre, federal lands containing valuable mineral deposits, thereby receiving a "patent" or deed conveying fee title to the lands, so long as certain statutory requirements were met. *See* 30 U.S.C. §§ 22, 29. In the early 1990s, Congress began taking action to end this process, which likely caused the significant increase in the number of patent-application filings received by BLM in that period. *See* Aplee. Br. at 7–8.

[3] As the prior panel noted, "Congress thereafter reenacted . . . the moratorium and exemption . . . annually through 2019." *Wyo-Ben*, 63 F.4th at 862.

[4] FHFC stands for "first half final certificates," which certify that a patent "may issue if all is found regular and upon demonstration and verification of a discovery of a valuable mineral deposit." *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1168 & n.1 (10th Cir. 1997). These certificates memorialize an applicant's compliance with "the 'paperwork' requirements . . . (title, proofs, posting requirements, purchase money)" found in 30 U.S.C. § 29. *Id.* at 1168 n.1.

30, 1994."

Aplt. App. IV at 23.  Pursuant to IM 95-01, BLM determined Wyo-Ben's application

was not eligible for continued processing.  *Wyo-Ben*, 63 F.4th at 864; *see* Aplt. App.

II at 27.

In our 1997 opinion in *Mt. Emmons*,[5] however, we rejected the approach taken

in IM 95-01, concluding that the moratorium exemption enacted by Congress

emphasized "the applicant's actions rather than the Secretary's actions" or the

physical location of the application.  117 F.3d at 1172.  In other words, the prior

panel explained that "an applicant meets its obligations under § 29 when it files all

necessary papers required to process the application, and that from that point forward

complete responsibility lies with the Secretary." *Id.* at 1171 (footnote omitted).

Consequently, we required the Secretary to continue processing the *Mt. Emmons*

application "to determine whether it [wa]s sufficiently complete to qualify for the

[moratorium exemption]." *Id.* at 1172–73.

In the wake of *Mt. Emmons*, on August 26, 1997, BLM issued Instruction

Memorandum No. 97-165 ("IM 97-165").  Aplt. App. II at 60–62.  In that document,

BLM instructed its state offices to further process patent applications only where the

purchase price had been paid prior to September 30, 1994, reasoning that *Mt.*

---

[5] In *Mt. Emmons*, BLM approved the plaintiff's mining-patent application and requested payment, which plaintiff made and BLM accepted on September 19, 1994 (eleven days before the moratorium went into effect).  117 F.3d at 1168.  Relying on IM 95-01, BLM refused to process the application further because no FHFC had issued.  *Id.*

*Emmons* "is only applicable to those applications subject to the moratorium for which the applicant had timely paid the purchase price." *Id.* at 60. Notably, IM 97-165 authorized further processing of a patent application in Wyoming, identified as "WYW—128331 Richard K. Brown et al.," but did not identify Wyo-Ben's application, leaving Wyo-Ben's application in the category of those not authorized to be processed during the moratorium. *See id.* at 61.

Over twenty-four years later, on October 17, 2019, Wyo-Ben filed the current petition in the District of Wyoming, seeking to compel the Secretary and BLM to determine whether Wyo-Ben's application qualified for the exemption to the moratorium.[6] Aplt. App. I at 9–13. The district court dismissed the petition on timeliness grounds, Wyo-Ben appealed, and this Court reversed, holding that Wyo-Ben's allegations set forth a potentially timely claim against the Secretary under the repeated-violations doctrine. *Wyo-Ben*, 63 F.4th at 861–62, 875. The prior panel remanded the case, instructing the district court to determine whether "the statute required the Secretary (rather than BLM) to review Wyo-Ben's application." *Id.* at 881. Only if the district court determined that the statute required the Secretary to act independently of BLM did the district court need to "decide the merits—that is, whether the Secretary 'unlawfully withheld' or 'unreasonably delayed' in taking the requisite action." *Id.*

---

[6] Specifically, Wyo-Ben, pursuant to "Section 706(1) of the Administrative Procedures Act," requested an "order requiring the [Respondent]s to review the Application to determine whether it qualifies for the Section 404(b) exception to the Temporary Moratorium . . . ." Aplt. App. I at 13.

On remand, Wyo-Ben sought to compel the Secretary to review Wyo-Ben's application, arguing that the Secretary had never conducted a post-*Mt. Emmons* review. Aplt. App. I at 102–07. The district court disagreed. Based on the administrative record, the district court concluded that BLM did review Wyo-Ben's application, both at the time Congress first imposed the moratorium and again (post-*Mt. Emmons*) when BLM issued IM 97-165. Aplt. App. II at 224–25. In both instances, the district court explained, BLM determined Wyo-Ben's application could not be further processed due to the moratorium. *Id.* The district court also found that the Secretary lawfully delegated authority to BLM to review Wyo-Ben's application. *Id.* at 226–28. Wyo-Ben timely appeals the district court's denial of its petition.

## II.    DISCUSSION

This Court reviews de novo a district court's order denying a petition to compel agency action pursuant to § 706(1). *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1186 (10th Cir. 1999). Additionally, we review the administrative record de novo, giving no deference to the district court. *Mt. Emmons*, 117 F.3d at 1170.

As previously noted, a prior panel of this Court held that Wyo-Ben filed a claim against the Secretary that was potentially timely under the repeated-violations doctrine because the record at that time contained no indication the Secretary had taken any action on Wyo-Ben's application (in contrast to BLM who clearly had acted). The panel noted that the district court had not determined whether "BLM properly stood in the shoes of the Secretary for purposes of determining that Wyo-Ben's application was subject to the moratorium." *Wyo-Ben*, 63 F.4th at 880. The

panel remarked that "[i]t is certainly possible that BLM properly resolved Wyo-Ben's application in 1994 pursuant to authority the Secretary delegated lawfully." *Id.* at 868 n.11. Pursuant to the remand order, the district court needed to consider whether there had been unreasonable delay under § 706(1) only if it "determine[d] that the statute required the Secretary (rather than the BLM) to review Wyo-Ben's application." *Id.* at 881.

On remand, the district court found that BLM conducted a review of Wyo-Ben's mining-patent application when it issued IM 97-165.[7] Aplt. App. II at 224. The district court also found that BLM's review was conducted pursuant to an express delegation of authority from the Secretary and, consequently, action by BLM constituted action of the Secretary. *Id.* at 226–28. Wyo-Ben does not challenge these findings. Accordingly, its appeal fails because its claim against the Secretary suffers the same timeliness issues that bar its claims against BLM. *See Wyo-Ben*, 63 F.4th at 868.[8] In 1997, the Secretary and BLM both acted on Wyo-Ben's application and determined that it is subject to the congressional moratorium. Consequently, there was nothing for the district court to compel. "As both a practical and legal

---

[7] In this appeal, we do not consider whether IM 95-01 (the 1994 BLM action discussed by the prior panel) constituted action by the Secretary on Wyo-Ben's application. The parties, on remand before the district court and in the instant appeal, have focused on IM 97-165. We will follow suit.

[8] Given Wyo-Ben's position taken in the prior appeal, that it was challenging the Secretary's inaction rather than BLM's action, 63 F.4th at 863, the prior panel had little reason to expressly state that Wyo-Ben's claim against BLM was untimely. Nonetheless, the clear import of the prior panel's decision is that only a claim based upon inaction might have been timely under the repeated violations doctrine, not a claim predicated on action taken in the 1990s. *See id.* at 867–69.

matter, the court [can]not compel action that the agency unlawfully withheld or unreasonably delayed in the past but then subsequently performed." *Id.* at 873.

Although Wyo-Ben now acknowledges BLM acted pursuant to a proper delegation of authority from the Secretary, Wyo-Ben attempts to minimize the impact of this delegation on its claims. Wyo-Ben's Opening Brief states, "[a]t the time of remand, another issue before the court concerned the scope of the authority delegated to BLM by the Secretary" but "[a]t this point . . . that issue is moot." Aplt. Br. at 17 n.7. Wyo-Ben misapprehends the prior panel's decision. The issue of the Secretary's delegation of authority to BLM is not moot; it is determinative. BLM reviewed Wyo-Ben's application in 1997 and determined the exemption to the moratorium did not apply to Wyo-Ben's application. Now that Wyo-Ben concedes that BLM acted pursuant to lawful delegation of authority from the Secretary when it made its determination, BLM's actions constituted action on the part of the Secretary as well. Accordingly, there is no longer anything for this Court to compel under § 706(1). Given that the Secretary has performed the required action (albeit through its delegate, BLM), no agency action has been "unlawfully withheld" or "unreasonably delayed." Action is not being withheld at this point. Any delay ended nearly three decades ago. Accordingly, because the district court found that the Secretary acted on Wyo-Ben's application (through its lawful delegate, BLM) and Wyo-Ben has not challenged that finding, we affirm.[9]

---

[9] In its diligent attempt to comply with the prior panel's instructions on remand, the district court examined whether the criteria applied in IM 97-165

## III.    CONCLUSION

For the reasons set forth above, we affirm the district court's judgment.


Entered for the Court


Ann Marie McIff Allen
District Judge

---

withstood arbitrary-and-capricious review under § 706(2). *See id.* at 228–34. Consequently, Wyo-Ben makes several arguments on appeal that BLM's actions were legally impermissible under the statutory scheme and the prior decisions of this Court. We do not tread into the territory controlled by § 706(2) because Wyo-Ben never raised any § 706(2) claim (nor does it seem likely any such claim could be timely insofar as it challenges BLM's actions in 1997). Although the prior panel could have been more explicit, nothing in its decision required the district court to engage in a § 706(2) analysis once the district court determined BLM acted pursuant to a lawful delegation of authority from the Secretary. While the prior panel discussed matters related to proper application of the moratorium, the panel made it clear that, even if Wyo-Ben had asserted a timely claim, the only "merits" that might have been implicated in this case concern "whether the Secretary 'unlawfully withheld' or 'unreasonably delayed' in taking the requisite action." *Wyo-Ben*, 63 F.4th at 881. Having determined the Secretary promptly acted, through its lawful delegate, BLM, our analysis is at an end.

9