937 F.2d 498
 MARATHON OIL COMPANY; Joan L. Savage; Barbara Cliff Toner;
Frank G. Cooley, as personal representative of
the Estate of Cameron Cliff, Plaintiffs-Appellees,
v.
Manuel LUJAN, Jr., Secretary of the Interior; Delos Cy
Jamison, Director, Bureau of Land Management; the
Department of the Interior, Defendants-Appellants.
 No. 90-1206.
 United States Court of Appeals,
Tenth Circuit.
 June 18, 1991.
 
 John S. White of Patton, Boggs & Blow, Washington, D.C. (John C. Martin and Virginia H. Sibbison of Patton, Boggs & Blow, Washington, D.C., and Don H. Sherwood and James M. King of Sherman & Howard assisting with the brief, Denver, Colo.), for plaintiffs-appellees.
 Dirk D. Snel, Atty. for Dept. of Justice, Washington, D.C. (Richard B. Stewart, Asst. Atty. Gen. and Gerald S. Fish and Robert L. Klarquist, Attys. for Dept. of Justice, Washington, D.C. assisting with the briefs), for defendants-appellants.
 Before HOLLOWAY, Chief Judge, and ALDISERT* and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 The issue we decide is whether the district court properly issued a writ of mandamus ordering the defendants-appellants, the Department of the Interior, the Secretary of the Interior, and the Director of the Bureau of Land Management, to "expeditiously complete administrative action" on an application for six oil shale mining patents within thirty days, to approve the application, and to issue the patents. We hold that the issuance of the writ was proper insofar as it directed the appellants to complete the administrative review of the application within thirty days. However, the district court erred in directing the appellants to approve the application and issue the patents. Therefore, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.
 
 FACTS
 
 2
 On April 4, 1986, the plaintiffs-appellees, Marathon Oil, Joan L. Savage, Barbara Cliff Toner, and Frank G. Cooley ("Marathon"), filed a Mineral Application with the Colorado State office of the Bureau of Land Management ("BLM"). The application covered six oil shale placer mining claims (Portland Claims one through six) located on approximately 1000 acres of land in western Rio Blanco County, Colorado. The land lies in what is referred to as the Green River Formation, an oil shale rich geological formation, which extends over a large area covering parts of Utah, Wyoming, and Colorado. On June 9, 1987, Marathon was notified that the Colorado division of the BLM would conduct a mineral examination of their claims to determine whether there was a sufficient amount of oil shale to justify the awarding of patents for the claims.[1] The BLM requested Marathon to locate representative sample points to be tested in the mineral examination. The field work for the examination was completed by late July, 1987.
 
 
 3
 By December 9, 1987, Marathon had filed all the necessary papers required to process its application pursuant to 30 U.S.C. Sec. 29. The Department of the Interior ("Department") tendered to Marathon an unsigned Final Certificate on May 11, 1988, confirming that the "[p]atent may issue if all is found regular and upon demonstration and verification of a valid discovery of a valuable mineral deposit and subject to the reservations, exceptions and restrictions noted herein." In addition, Richard Tate, Chief of the Lands and General Mining Law Section, enclosed a cover letter to Marathon's attorneys stating that "[p]atent issuance will depend upon the results of the mineral examination." Finally, a year later, on February 1, 1989, the Department prepared a draft of its Final Mineral Report. The report unequivocally stated that Marathon's mineral claims were valid and that the patents should issue.[2] However, by October of 1989, the patents still had not been issued.
 
 
 4
 Marathon, understandably frustrated by the seemingly endless delay, filed suit in the United States District Court for the District of Colorado requesting that the court order the defendants to grant the patents. On June 20, 1990, the district court ruled in favor of Marathon and ordered the following relief: (1) it issued a writ of mandamus requiring the defendants to "expeditiously complete administrative action" on the application and to approve the application and issue the patents within thirty days; (2) the court enjoined the defendants from failing to complete the administrative review of the application and from failing to issue the patents; and (3) the court granted Marathon's motion for summary judgment in which it had requested the court to order the defendants to issue the patent. The defendants appealed, and we granted their request that we stay the district court's injunction order pending appeal.
 
 DISCUSSION
 
 5
 Mandamus relief is an appropriate remedy to compel an administrative agency to act where it has failed to perform a nondiscretionary, ministerial duty. See Estate of Smith v. Heckler, 747 F.2d 583, 591 (10th Cir.1984); Ortiz v. United States, 661 F.2d 826, 831 (10th Cir.1981); Schulke v. United States, 544 F.2d 453, 455 (10th Cir.1976). Administrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform. See Public Citizen Health Research Group v. Comm'r, FDA, 740 F.2d 21, 32 (D.C.Cir.1984); Gillis v. United States Dep't of Health & Human Servs., 759 F.2d 565, 578 (6th Cir.1985). See also Estate of Smith v. Heckler, 747 F.2d at 591 (ordering the Secretary of Health and Human Services to promulgate regulations because her failure to do so constituted "agency action unlawfully withheld" under the Administrative Procedures Act ("APA"), 5 U.S.C. Sec. 706(1)).
 
 
 6
 Congress intended the defendants to process oil shale mining patent applications. Therefore, the writ of mandamus ordering appellants to "expeditiously complete administrative action" was entirely appropriate. See Wilbur v. Krushnic, 280 U.S. 306, 319, 50 S.Ct. 103, 105, 74 L.Ed. 445 (1930). Indeed, in their brief, the appellants admit as much. See Appellants' Opening Br. at 10.
 
 
 7
 What the appellants do dispute is the district court's order that the department complete its review of the patent application within thirty days.[3] Although the party seeking issuance of a writ of mandamus has a heavy burden of showing that the conditions are clearly met, Kerr v. United States Dist. Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976), the issuance of the writ is a matter of the issuing court's discretion. Id. See also DeMasi v. Weiss, 669 F.2d 114, 117 (3d Cir.1982) ("Once the conditions [for issuing the writ] are satisfied, the Court has stated that the matter is largely one within the discretion of the issuing court."). After reviewing the record, we cannot agree with the defendants that the district court abused its discretion in ordering the agency to take action within thirty days.
 
 
 8
 When the district court issued the writ, more than four years had elapsed since Marathon had filed its application with the BLM. By December 9, 1987, Marathon had met its obligations under 30 U.S.C. Sec. 29. From this point forward, the responsibility for approving Marathon's application lay with the defendants. It took the BLM almost three years from the filing of Marathon's application to complete the mineral report.[4] The report was completed on February 1, 1989, and recommended that the patents be issued. As of February 1, 1989, the only thing standing between Marathon and its patents was the absence of signature "under the authority of the Director [of the Bureau of Land Management] and signed in the name of the United States." 43 C.F.R. Sec. 1862.0-3(a) (1990). Eight months later when Marathon filed suit in district court, the patent still had not issued. When the district court finally issued the writ of mandamus ordering the Department to finish the process, approximately fourteen months had elapsed since the mineral report recommending approval had been issued.
 
 
 9
 To make matters worse, the defendants have proffered no justifiable explanation for their intransigence. Indeed, at oral argument, the defendants candidly admitted that there were no plans to make any further factual inquiry into the patent application.[5] The only argument proffered by the defendants in support of the delay was that they were waiting until the Department passed an amendment to the regulations establishing standards for determining whether the potential yield of an oil shale mining claim is of sufficient value to justify the awarding of a patent. Currently, whether a mining claim is of sufficient value to merit a patent is reviewed under the standard set by the Department in Freeman v. Summers, 52 L.D. 201 (1927). See Andrus v. Shell Oil Co., 446 U.S. 657, 673, 100 S.Ct. 1932, 1941, 64 L.Ed.2d 593 (1980). We note that in the event the proposed regulation is enacted,[6] the potential yield of the Portland claims appears to exceed the minimum yield level required for patent issuance under the proposed regulation. Although we recognize the Department's desire to promulgate regulations that clarify the Freeman standard, this alone cannot justify the substantial delay that has occurred in processing Marathon's application nor can it justify the continued delay sought by appellants.[7] Under the facts of this case, we cannot say that the district court abused its discretion when it ordered the Department to process Marathon's application within thirty days.
 
 
 10
 The district court, however, exceeded its authority when it ordered the defendants to approve the application and to issue the patents. The Department has not yet determined officially that all conditions to issuance of the patents have occurred. Thus, the Department has not yet reached the point when it is left only with the purely ministerial act of issuing the patent. Therefore, the approval of the application should not yet be compelled by a writ of mandamus. See Ortiz, 661 F.2d at 831. In other words, while the district court can compel the defendants to exercise their discretion, it cannot dictate how that discretion is to be exercised. Cf. Wilbur, 280 U.S. at 319, 50 S.Ct. at 105;[8] Estate of Smith, 747 F.2d at 591 (where the Secretary of Health and Human Services ignored her duty to promulgate nursing home regulations, mandamus relief was proper insofar as it compelled the Secretary to promulgate the regulations--the relief did not, however, dictate the substance of the regulations).
 
 CONCLUSION
 
 11
 The district court's order granting mandamus relief to Marathon is AFFIRMED to the extent that it requires the defendants to act on Marathon's application. The relief granted by the district court instructing the defendants to approve the application is REVERSED. Although, on the basis of the record before us, we expect that the application will be approved, we recognize the possibility that the defendants may decline to approve the application. In such an event, the reasons for the rejection should be stated with sufficient particularity so that the district court can review the defendants' decision for error if an appeal is taken. The district court's original order required the defendants to act on and approve Marathon's application within thirty days. We stayed the district court's order on the thirtieth day. Therefore, were we simply to affirm the district court, the defendants would have only one remaining day to fulfill their obligations under the district court's original order. Because we recognize that the defendants probably cannot act within one day, we ORDER the defendants to reach a decision and to report that decision to the plaintiffs and the district court within fifteen days. Of course, the district court retains the discretion to alter this fifteen day deadline in the event it views this as an unreasonable time limit. This matter is REMANDED to the district court for further proceedings consistent with this opinion. The mandate shall issue forthwith.
 
 
 
 *
 Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 Because Marathon's claims were located before the Mineral Leasing Act of 1920, Pub.L. No. 146, 41 Stat. 437 (codified at 30 U.S.C. Secs. 181 et seq.), was enacted on February 25, 1920, if the patents are approved, Marathon is entitled to a fee simple interest in the land covered by the claims. For a thorough explanation of the laws pertaining to oil shale mining, see the district court's excellent opinion below. Marathon Oil Co. v. Lujan, 751 F.Supp. 1454, 1474 (D.Colo.1990)
 
 
 [2]
 The Final Mineral Report states that "[b]ased on our field examination and records research, we recommend that patent be granted to the Portland 1 through 6 Claims, inclusive." R.Vol. II, Doc. 3 at 3
 
 
 [3]
 As noted, supra, the district court ordered three types of relief--mandamus, injunctive and summary judgment. For purposes of this appeal, we review all of the relief ordered by the district court as mandamus relief. The injunctive relief duplicated the mandamus relief. Cf. Estate of Smith, 747 F.2d at 591 (noting that where injunctive relief imposed by a court orders an agency to comply with the APA, the "injunction is essentially in the nature of mandamus"). Likewise, the summary judgment relief granted by the district court simply duplicated the mandamus relief
 
 
 [4]
 Marathon's application, filed on April 4, 1986, was immediately subject to a one year delay due to the Department's moratorium on processing oil shale patent applications. Thus, it wasn't until June of 1987, when the Department notified Marathon that it would perform a mineral examination sometime that summer, that the defendants began processing Marathon's application. The mineral report was not issued until February 1, 1989, some nineteen months later
 
 
 [5]
 The panel specifically asked counsel for the defendants, "Are there any further factual inquiries that need to be made at this point in the record?" Counsel for the defendants responded, "Interior has not expressed a desire to make any factual inquiries, however, it ought to have that option to make them."
 
 
 [6]
 The proposed rule was submitted for public comment on January 9, 1991. See 56 Fed.Reg. 938 (1991) (to be codified at 43 C.F.R. Sec. 3842.4) (proposed Jan. 9, 1991). As of the date this opinion was filed, no further action had been taken on this proposed rule
 
 
 [7]
 Until the issuance of the patent, the Secretary of the Interior has authority to "review, reverse, amend, annul or affirm all proceedings in the Department [of the Interior] having for their ultimate object to secure the alienation of any portion of the public lands...." Knight v. United States Land Ass'n, 142 U.S. 161, 178, 12 S.Ct. 258, 262, 35 L.Ed. 974 (1891)
 
 
 [8]
 In Wilbur, the Supreme Court implicitly rejected the mandamus relief urged by Marathon. In Wilbur, the applicant contended that the Secretary of the Interior had denied his patent application on improper grounds. The Secretary admitted that he had denied the application based solely upon his interpretation of a particular provision contained in the Mineral Leasing Act. United States ex rel. Krushnic, 30 F.2d 742, 747 (D.C.Cir.1929), modified sub nom. Wilbur v. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445 (1930). The United States Court of Appeals for the District of Columbia held that the Secretary's interpretation was in error and remanded the case to the district court with instructions that it issue a writ of mandamus ordering the Secretary to issue the patent. Id. The Supreme Court agreed with the court of appeals' decision that the Secretary erred in interpreting the provision. Wilbur, 280 U.S. at 318, 50 S.Ct. at 105. Nonetheless, the Supreme Court, evidently deciding that the Court of Appeals' mandamus instructions improperly interfered with the Secretary's discretion, modified the mandamus instructions: "A writ of mandamus should issue directing a disposal of the application for patent on its merits unaffected by the [improperly interpreted provision of the Mineral Leasing Act]...." Id. at 319, 50 S.Ct. at 105