150 F.3d 1132
 28 Envtl. L. Rep. 21,404, 98 Cal. Daily Op.
Serv. 5841,
98 Daily Journal D.A.R. 8125
 ONRC ACTION; Blue Mountain Native Forest Alliance; Oregon
Natural Desert Association; Portland Audubon
Society; Kettle Range Conservation
Group, Plaintiffs-Appellants,
v.
BUREAU OF LAND MANAGEMENT; Defendant-Appellee,
William Smith Properties, Inc. individually and on behalf of
affected landowners, Defendant-Intervenor-Appellee,
Clearwater Land Exchange, Defendant-Intervenor-Appellee.
 No. 97-35467.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 8, 1998.
Decided July 29, 1998.
 
 Marianne G. Dugan, Western Environmental Law Center, Inc., Eugene, Oregon, for plaintiffs-appellants.
 Ellen J. Durkee, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant-appellee.
 Paul A. Turcke, Moore & McFadden, Boise, Idaho, for defendant-intervenor-appellee.
 Gayle K. Rowe, Dunn, Carney, Allen, Higgins and Tongue, Portland, Oregon, for defendant-intervenor-appellee.
 Appeal from the United States District Court for the District of Oregon; Michael R. Hogan, Chief District Judge, Presiding. D.C. No. CV-96-00422-MRH(TMC).
 Before: GOODWIN, ALARCON, and BRUNETTI, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Plaintiffs Oregon Natural Resources Council and other environmental organizations (collectively "ONRC"), appeal from the dismissal of their action against the Bureau of Land Management ("BLM"). ONRC filed suit under the Administrative Procedure Act ("APA") claiming that BLM had violated the National Environmental Policy Act ("NEPA") and the Federal Land Policy Management Act ("FLPMA") by failing to halt certain actions pending completion of an Environmental Impact Statement ("EIS"). The district court found that ONRC did not identify any "final agency action" challengeable under the APA and dismissed ONRC's action for lack of jurisdiction. We affirm the district court's dismissal because we conclude that ONRC lacks standing under the APA to bring the present action.
 
 
 2
 * On February 1, 1994, the Forest Service and BLM proposed to develop an ecosystem management strategy for forests and public lands (federal lands administered by BLM) east of the Cascade Mountains in Oregon and Washington (Eastside Ecosystem Management Strategy or "Eastside Management Plan"). This proposal was in response to President Clinton's July 1993 mandate "to develop a scientifically sound and ecosystem-based strategy for management of these lands." Notice, Eastside Ecosystem Management Strategy, 59 Fed.Reg. 4680 (1994). The notice in the Federal Register indicated that the preparation of an Environmental Impact Statement ("Eastside EIS") would result in the selection of an alternative that would in turn result in amendment or revision of applicable BLM Resource Management Plans ("RMP"). Id. During the Eastside EIS development process the Forest Service implemented an interim screening process for proposed forest sales to preserve alternatives during the planning process. BLM did not take similar action.
 
 
 3
 On October 2, 1995, ONRC and several other environmental organizations filed a thirty-four page "Petition with Request for Stay" ("Petition") with the BLM. The petition requested that BLM "impose a moratorium" on (1) logging and road construction in "late successional/old growth ("LS/OG") forests" in the East Cascade area; (2) land exchanges affecting LS/OG forests; and (3) juniper eradication in these areas. The Petition alleged that BLM's refusal to impose this moratorium would violate the mandates of NEPA, requiring preservation of alternatives during the EIS process, and FLPMA, requiring revision of land use plans. BLM responded with a two-page letter indicating that raising these issues in site-specific challenges to actual projects would be the appropriate forum. BLM also noted that it continued actions under existing program statements as provided in 40 C.F.R. § 1506.1(c).
 
 
 4
 ONRC and some of the environmental organizations that joined in the Petition then filed this action against BLM under the APA alleging violations of NEPA and FLPMA. ONRC alleged that BLM failed to halt land transactions, logging permits and juniper extraction during the Eastside EIS process. ONRC argued that the Eastside EIS and Eastside Management Plan will alter the current management practices of BLM and that BLM is required to halt any actions that will commit irretrievable resources prior to completion of the Eastside EIS.
 
 
 5
 Clearwater Land Exchange and William Smith Properties were allowed to intervene as defendants with BLM (collectively referred to as "BLM"). BLM moved to dismiss the suit on the basis that the district court lacked jurisdiction because there was no final agency action challengeable under the APA. A magistrate judge considered the motion and recommended dismissal. The magistrate judge found that there was no final agency action and therefore the court lacked jurisdiction. The district court adopted the findings and recommendation of the magistrate judge and dismissed ONRC's action against BLM.
 
 II
 
 6
 ONRC argues that the decision not to change the status quo is a final agency action challengeable under the APA. Additionally, ONRC points to BLM's letter responding to the ONRC petition. ONRC asserts that the refusal to impose a moratorium as requested in the petition is a final agency action. We review "a district court's grant of a motion to dismiss under Rule 12(b)(1) de novo." Mundy v. United States, 983 F.2d 950, 952 (9th Cir.1993).
 
 
 7
 Neither NEPA nor FLPMA contain provisions allowing a right of action. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). A party alleging violations of NEPA and FLPMA can bring an action under the APA challenging an "agency action." See id. (quoting 5 U.S.C. § 702).[1] To demonstrate statutory standing under the APA, a plaintiff must (1) identify a final agency action; and (2) show that the injury complained of "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the basis ... [of the] complaint." Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1353-54 (9th Cir.1994) (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). See also National Wildlife Fed'n, 497 U.S. at 882, 110 S.Ct. 3177 ("When ... review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.' ") (quoting 5 U.S.C. § 704).[2]
 
 
 8
 There are two parts to ONRC's argument that BLM's refusal to institute a moratorium on certain actions is a final agency action under the APA. First, ONRC argues that BLM's failure to implement a moratorium on certain actions pending completion of the Eastside EIS was a challengeable final agency action. Second, ONRC contends that the action was final despite the fact that the action was not site-specific but regional in character.
 
 
 9
 In support of its first argument that BLM's refusal to institute a moratorium was an agency action under the APA, ONRC relies on two cases that hold certain inaction equates to agency action. See City of Chicago v. United States, 396 U.S. 162, 166-67, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969) (holding that agency decision not to take action was not "inaction" but rather a decision on the merits resulting in a reviewable agency action); Rochester Tel. Corp. v. United States, 307 U.S. 125, 140-42, 59 S.Ct. 754, 83 L.Ed. 1147 (1939) (eliminating the distinction between 'affirmative orders' and 'negative orders' because "dismissing a complaint on the merits and maintaining the status quo is an exercise of administrative function, no more and no less, than an order directing some change in status"). In these cases, however, the lack of action was based on an evaluation of the merits and a reasoned decision not to act. See Chicago, 396 U.S. at 166, 90 S.Ct. 309; Rochester Telephone, 307 U.S. at 143-44, 59 S.Ct. 754.
 
 
 10
 This case is more akin to the Supreme Court's decision in National Wildlife Federation. In National Wildlife Federation, the Court considered plaintiffs' challenge to BLM's "land withdrawal program." Id. at 875, 110 S.Ct. 3177. The Court held that there was no right of review established under the APA. Id. at 892-93, 110 S.Ct. 3177. The Court concluded that because plaintiffs failed to point to "a single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations," there was no agency action on which to base their challenge under the APA. Id. at 890, 110 S.Ct. 3177.
 
 
 11
 In this case, BLM did not evaluate the merits of ONRC's contentions to arrive at a reasoned, deliberate decision. See Western Radio Servs. Co., Inc. v. Glickman, 123 F.3d 1189, 1196 (9th Cir.1997) (explaining that a final agency action must "mark the 'consummation' of the agency's decisionmaking process," thus implying that a process of decisionmaking must be underway). BLM never entered into the decisionmaking process because it never intended to consider a change of the status quo. Even in response to the petition submitted by ONRC, BLM did not enter into an evaluative process. BLM's response letter, informational in nature, merely informed ONRC that BLM would not consider their requests unless raised in the context of site-specific decisions. Thus, similar to the facts in National Wildlife Federation, this case presents a situation where there is no identifiable agency order, regulation, policy or plan that may be subject to challenge as a final agency action. See also Northcoast Envtl. Center v. Glickman, 136 F.3d 660, 669 (9th Cir.1998) (holding that preliminary research and development efforts do not trigger EIS requirements under NEPA or constitute an agency action under the APA).
 
 
 12
 Second, ONRC argues that the fact that the decision may impact several separate actions is no reason to conclude that there was no final agency action. ONRC points to a line of cases to support its contention that region-wide actions that potentially impact several projects and not just site-specific agency decisions are open to judicial review. See, e.g., Resources Ltd., Inc. v. Robertson, 35 F.3d 1300, 1303-04 (9th Cir.1994) (holding that plaintiffs' challenge to resource management plan and accompanying EIS was ripe and plaintiffs did not have to wait for site-specific implementation); Salmon River Concerned Citizens, 32 F.3d at 1355 (rejecting the Government's argument that plaintiffs' claims must wait for specific applications of challenged policy statement); Idaho Conservation League v. Mumma, 956 F.2d 1508, 1518-19 (9th Cir.1992) (explaining that challenges to specific projects would be inadequate where challenge is based on errors with overall plan).
 
 
 13
 The recent Supreme Court case, Ohio Forestry Assoc., Inc. v. Sierra Club, --- U.S. ----, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998), calls into doubt a plaintiff's ability to challenge an agency's adoption of a plan without site-specific actions as the focus of the challenge. In Ohio Forestry, the Court concluded that the Sierra Club's challenge to a resource management plan adopted by the United States Forest Service was not ripe because the plan did not in itself authorize the agency to enter into logging agreements without a further review process. Id. 118 S.Ct. at 1670. Thus, the Court determined that it would be necessary for the Sierra Club to wait for more site-specific proposals under the plan. Id. at 1670-71. We need not decide, however, to what extent the law of this circuit conflicts with Ohio Forestry. We conclude on the facts of this case that no plan was adopted by BLM and thus ONRC has not identified a final agency action.
 
 
 14
 The cases relied on by ONRC all include a conscious decision arrived at by the agency. See, e.g., Resources Ltd., 35 F.3d at 1302 (challenging resource management plan and accompanying EIS approved by the Forest Service); Salmon River, 32 F.3d at 1348 (challenging vegetation management policy and accompanying EIS adopted by Forest Service); Idaho Conservation League, 956 F.2d at 1510 (challenging Forest Service's decision to recommend against designation of wilderness areas). In this case, the fact that the challenge is not aimed at a site-specific project is not the reason ONRC's arguments fail. They fail because ONRC cannot point to a deliberate decision by BLM to act or not to take action. Therefore, the district court did not err in finding that BLM's failure to implement a moratorium was not a final agency action.
 
 III
 
 15
 Despite ONRC's failure to point to a challengeable agency action, ONRC argues that BLM has failed to take actions required by NEPA and FLPMA. A failure to act may form the basis of a challenge under the APA. A court's review of an agency's failure to act has been referred to as an exception to the final agency action requirement. See Independence Mining Co., Inc. v. Babbitt, 105 F.3d 502, 511 (9th Cir.1997); Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C.Cir.1987). "When agency recalcitrance is in the face of clear statutory duty or is of such a magnitude that it amounts to an abdication of statutory responsibility, the court has the power to order the agency to carry out its substantive statutory mandates." Public Citizen Health Research Group v. Comm'r, Food & Drug Admin., 740 F.2d 21, 32 (D.C.Cir.1984); see also 5 U.S.C. § 551(13) (defining agency action as also including the failure to act); 5 U.S.C. § 706(1) (requiring the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed"); Marathon Oil Co. v. Lujan, 937 F.2d 498, 500 (10th Cir.1991) (holding that "[a]dministrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform"); Gillis v. United States Dept. of Health and Human Servs., 759 F.2d 565, 578 (6th Cir.1985) (stating that review is appropriate to determine whether agency failed to act in accordance with statutory duties, but holding that facts did not indicate that agency failed to comply with statutory duties).
 
 
 16
 ONRC argues that where there is a pending EIS, NEPA establishes a duty "to stop actions that adversely impact the environment, that limit the choice of alternatives for the EIS, or that constitute an 'irreversible and irretrievable commitment of resources.' " (quoting Conner v. Burford, 848 F.2d 1441, 1446 (9th Cir.1988).) Additionally, ONRC contends that FLPMA "requires BLM to base its land management activities on up-to-date land use plans." The district court considered this argument but found that ONRC's challenge "must fail because plaintiffs are not attempting, through this action, to compel BLM to act, but rather, to stop its activities."
 
 
 17
 We disagree with the district court's conclusion that because ONRC is attempting to halt agency action it is precluded from bringing this challenge under the APA. The district court's conclusion rests only on the characterization of ONRC's challenge as seeking to halt activity rather than compel it. We have upheld, however, an injunction imposed to halt certain agency activities pending compliance with NEPA where it was clear that such activities would interfere with the process required by NEPA. See Portland Audubon Soc'y v. Babbitt, 998 F.2d 705, 709 (9th Cir.1993) (upholding injunction against BLM timber sales pending completion of a supplemental EIS required by NEPA). Furthermore, it is possible to characterize the challenge as one seeking to compel compliance with NEPA and FLPMA. We must consider not whether ONRC seeks to enjoin or compel BLM action, but whether BLM has a clear duty to act under NEPA or FLPMA.
 
 
 18
 NEPA requires an EIS when there is a major federal action undertaken by an agency, unless an Environmental Assessment reveals a finding of no significant impact. 40 C.F.R. § 1501.4 (1997). When an EIS is underway NEPA regulations established by the Council of Environmental Quality ("CEQ") prohibit an agency from taking any actions that would significantly impact the environment.[3] 40 C.F.R. § 1506.1(c) (1997). This limitation, however, is not without qualification.[4] In this case, the major federal action is the Eastside Management Plan ("Plan"). Thus, according to ONRC, until the EIS for the Plan is completed, no action concerning the Plan should be taken that would adversely impact the environment.
 
 
 19
 BLM argues that NEPA establishes no clear duty in this case. To support this contention, BLM points to subsection (c) of Federal Regulation § 1506.1 providing an exception where the action in question is covered by an existing program statement. See n. 4, supra. BLM argues that the RMPs are the existing program statement that currently cover land management and resource allocation on BLM controlled lands. Thus, this section of the CEQ regulations limiting agency action pending completion of an EIS does not apply here.
 
 
 20
 To counter BLM's argument, ONRC asserts that the Eastside Management Plan is unique in that it proposes land management on a region-wide basis considering effects on the ecosystem as a whole rather than on particular parcels. Thus, BLM's actions are not covered by any existing program statements. "As BLM acknowledged in the summary of the draft Eastside EIS, this planning on an entirely new level 'broad-scale, integrated, ecosystem-based planning and management over such a large area ... represents a new way of thinking.' " (quoting Draft Eastside EIS.) Thus, ONRC argues, there is no existing program statement on par with that of the proposed Eastside Management Plan covering current agency actions. ONRC contends that a moratorium of certain agency actions affecting the environment is warranted here. This argument is not persuasive.
 
 
 21
 The Eastside Management Plan is an alternate way to manage land and resources, the current management of which is guided by the existing RMPs. Affidavits presented by BLM indicate that changes to existing practices may take place but that there will probably not be any wholesale elimination of the current practices in place. Even if parts of the Plan replace some of the existing RMPs, there is no provision in NEPA or regulations promulgated under NEPA requiring that the existing statements not be subject to change. Thus, the exception in 40 C.F.R. § 1506.1(c) applies to the facts in this case.
 
 
 22
 ONRC also contends that BLM has failed to act in accordance with duties established under FLPMA. ONRC points to various provisions in FLPMA and to sections of the Federal Regulations promulgated pursuant to FLPMA to support its contention that "BLM is neglecting its duty under FLPMA to adequately monitor and update its management plans before relying on them in making land management decisions." This relates to ONRC's argument that there are no existing programmatic plans in existence under NEPA because several land use plans have not been revised or amended as required. Specifically, ONRC points to 43 U.S.C. §§ 1701(a)(8), 1712, and 1732(b).
 
 
 23
 BLM argues that nothing in these provisions provides a clear statutory duty with which a court can require BLM to comply. "The interpretation of a statute by the agency charged with its administration is generally entitled to 'considerable weight.' " Bolt v. United States, 944 F.2d 603, 606 (9th Cir.1991) (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). "If the agency's construction does not conflict with the clear language of the statute, [the court] will uphold the agency's position if reasonable." Id. at 606-07. We conclude that BLM's interpretation is reasonable. See 43 U.S.C. § 1731(b) (discussing BLM's duty to administer FLPMA).
 
 
 24
 Section 1701 provides several policy statements which require due consideration, but do not provide a clear duty to update land management plans or cease actions during the updating process.[5] Section 1712 requires the revision of land use plans when "appropriate."[6] Section 1712 also provides the proper procedure and criteria to follow during development or revision of a land use plan. The language in Section 1712 does not, however, establish a clear duty of when to revise the plans, nor does it create a duty to cease actions during such revisions. Section 1732 also lacks a statement of clear statutory duty. It provides general guidance during decisions on management actions such as granting easements and developing trade.[7]
 
 
 25
 The provisions in the Federal Regulations relied on by ONRC also provide no clear duty with which BLM may be required to comply. Federal Regulation § 1601.0-5(k)(8) requires that "[i]ntervals and standards for monitoring and evaluating the plan to determine the effectiveness of the plan and the need for amendment or revision" be included in each Resource Management Plan. 43 C.F.R. § 1601.0-5(k) (1997). Section 1610.4-9 provides in more detail the requirement that the RMPs contain monitoring standards and intervals as well as certain criteria. 43 C.F.R. § 1610.4-9 (1997). Section 1610.5-6 requires that RMPs be revised "as necessary, based on monitoring and evaluation findings (§ 1610.4-9), new data, new or revised policy and changes in circumstances affecting the entire plan or major portions of the plan." 43 C.F.R. § 1610.5-6 (1997).
 
 
 26
 ONRC has alleged that BLM is required to halt certain actions while revising its RMPs. BLM maintains that none of these regulations provide any mandatory schedule for revision. It may be that a thorough examination of the current RMPs would reveal that revision of some of the land use plans is warranted under the language of the regulations. ONRC fails to point to any provision in FLPMA or the regulations, however, that would require BLM to cease actions during the revision process.
 
 
 27
 ONRC asserts that because the RMPs are outdated, they cannot be existing program plans as stated in NEPA. This argument is unfounded. The Eastside EIS will likely result in new data requiring at least an evaluation of the current RMPs. NEPA provides no guidance, however, as to the status of the existing plans. In this case, because the Eastside EIS will likely lead to some revision or amendment of the current RMPs, it is reasonable to conclude that the RMPs are existing program statements for purposes of NEPA. The fact that revisions of the RMPs are not necessarily current does not change this result. Therefore, ONRC has failed to point to any clear statutory duty under NEPA or FLPMA that would allow it to bring this challenge under the APA.
 
 
 28
 We conclude that ONRC has no statutory standing under the APA. Cf. Steel Co. v. Citizens for a Better Environment, --- U.S. ----, ---- n. 2, 118 S.Ct. 1003, 1013 n. 2, 140 L.Ed.2d 210 (1998) (explaining that a decision of statutory standing may take priority over an issue of Article III standing). ONRC has failed to identify a BLM action that constitutes a final agency action for purposes of the APA. Additionally, ONRC has not identified a clear duty under NEPA or FLPMA with which BLM must comply. Therefore, BLM's failure to act in this case is not challengeable under the APA.
 
 AFFIRMED
 
 
 [1]
 5 U.S.C. § 702 of the APA provides in pertinent part:
 A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
 Agency action is defined as including "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or a failure to act." 5 U.S.C. § 551(13).
 
 
 [2]
 5 U.S.C. § 704 provides in pertinent part:
 Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.
 
 
 [3]
 "The CEQ regulations are binding on all federal agencies and provide guidance to the courts for interpreting NEPA requirements." Oregon Natural Resources Council v. U.S. Forest Serv., 834 F.2d 842, 847 n. 5 (9th Cir.1987)
 
 
 [4]
 40 C.F.R. § 1506.1 provides in pertinent part:
 (a) Until an agency issues a record of decision as provided in § 1505.2 (except as provided in paragraph (c) of this section), no action concerning the proposal shall be taken which would:
 (1) Have an adverse environmental impact; or
 (2) Limit the choice of reasonable alternatives.
 ....
 (c) While work on a required program environmental impact statement is in progress and the action is not covered by an existing program statement, agencies shall not undertake in the interim any major federal action covered by the program which may significantly affect the quality of the human environment unless such action:
 (1) Is justified independently of the program;
 (2) Is itself accompanied by an adequate environmental impact statement; and
 (3) Will not prejudice the ultimate decision on the program. Interim action prejudices the ultimate decision on the program when it tends to determine subsequent development or limit alternatives.
 
 
 [5]
 43 U.S.C. § 1701(a)(8) provides in pertinent part:
 (a) The Congress declares that it is the policy of the United States that-
 (8) the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air, atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use.
 43 U.S.C. § 1701(a)(8).
 
 
 [6]
 43 U.S.C. § 1712 provides in pertinent part:
 (a) Development, maintenance, and revision by secretary
 The Secretary shall, with public involvement and consistent with the terms and conditions of this Act, develop, maintain, and, when appropriate, revise land use plans which provide by tracts or areas for the use of the public lands. Land use plans shall be developed for the public lands regardless of whether such lands previously have been classified, withdrawn, set aside, or otherwise designated for one or more uses.
 43 U.S.C. § 1712(a).
 
 
 [7]
 43 U.S.C. § 1732(b) provides in pertinent part:
 (b) easements, permits, etc., for utilization through habitation, cultivation, and development of small trade or manufacturing concerns; applicable statutory requirements
 .... In managing the public lands the secretary shall, by regulation or otherwise, take any actions necessary to prevent unnecessary or undue degradation of the lands. 43 U.S.C. § 1732(b).