RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0442p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

INTERMODAL TECHNOLOGIES, INC.
                    *Plaintiff-Appellant,*

          *v.*

MARY E. PETERS, Secretary of
Transportation, and DAVID KELLY, Acting
Administrator of the National Highway
Traffic Safety Administration,
                    *Defendants-Appellees.*

No. 07-2196

_____

Appeal from the United States District Court

for the Eastern District of Michigan at Bay City.

No. 06-12282—Thomas L. Ludington, District Judge.

Submitted:  October 30, 2008

Decided and Filed:  December 10, 2008

Before:  KENNEDY, SUTTON and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:**  J. Hatcher Graham, LAW OFFICE, Warner Robins, Georgia, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees.

_____

**OPINION**

_____

SUTTON, Circuit Judge.  In this appeal, InterModal claims that the National Highway Traffic Safety Administration (NHTSA) acted arbitrarily and capriciously in denying its application for a temporary exemption from a tractor-trailer safety standard.

1

Because NHTSA acted within its discretion in interpreting and applying its own regulation, we affirm.

I.

The National Traffic and Motor Vehicle Safety Act of 1966, Pub. L. No. 89-563, 80 Stat. 718 (codified as amended at 49 U.S.C. § 30101 *et seq.*), charges the Secretary of Transportation with prescribing motor-vehicle safety standards, *see* 49 U.S.C. § 30111(a), a duty the Secretary has delegated to NHTSA, *see* 49 C.F.R. § 501.2. The Act makes it unlawful to manufacture a motor vehicle for sale that does not meet NHTSA's safety requirements, 49 U.S.C. § 30112(a)(1), though it empowers NHTSA to grant exemptions from its safety standards under certain circumstances, *see id.* §§ 30113–30114.

One of NHTSA's safety standards, Standard 121, 49 C.F.R. § 571.121, establishes a detailed set of "performance and equipment requirements for braking systems on vehicles equipped with air brake systems." *Id.* § 571.121 S1. NHTSA amended Standard 121 in 1995 to require truck trailers outfitted with air brakes to have an "antilock brake system" (ABS), *id.* § 571.121 S5.2.3.1, a term the regulation defines in detail, *id.* § 571.121 S4; *see* 60 Fed. Reg. 13,216 (Mar. 10, 1995). The revised rule also requires trailers to have an external malfunction-warning light powered by an electrical circuit. 49 C.F.R. § 571.121 S5.2.3.2, 5.2.3.3.

Over the last several years, at various junctures of the administrative-law process, InterModal's president, William Washington, has insisted that Standard 121 improperly and unnecessarily excludes a pneumatic, non-electronic brake system, the MSQR-5000, that InterModal's sister company, Air Brake Systems, Inc., spent more than a decade developing. *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 636 (6th Cir. 2004). Two days after NHTSA issued the amended Standard 121 in March 1995, Washington filed suit in federal court seeking review of the agency's new rule. Washington argued (unsuccessfully) that Standard 121 amounted to a design standard, not a performance standard within NHTSA's purview. *See Washington v. Dep't of Transp.*, 84 F.3d 1222, 1223–25 (10th Cir. 1996). Five years later, after NHTSA's chief counsel issued two informal opinion letters to prospective purchasers of the MSQR-5000 concluding that the device fell short of Standard 121's requirements, Air Brake Systems brought a second suit challenging that conclusion. *See Air*

*Brake Sys.*, 357 F.3d at 636–37. We rejected that challenge without reaching the merits, holding that the opinion letters did not amount to reviewable final agency action. *See id.* at 646.

Most recently, Washington formed InterModal, a new trailer-manufacturing company, and on its behalf he filed an application with NHTSA in January 2004 requesting an exemption from Standard 121's warning-light requirement for trailers equipped with the MSQR-5000. The company sought an exemption on several grounds, including that setting it free from Standard 121's restrictions would aid the "development or field evaluation of a new motor vehicle safety feature providing a safety level at least equal to the safety level of the standard," 49 U.S.C. § 30113(b)(3)(B)(ii).

InterModal's application languished for more than two years before NHTSA finally rendered a decision denying it on the merits in February 2006. *See* 71 Fed. Reg. 7,614 (NHTSA Feb. 13, 2006). After NHTSA denied its application, InterModal brought this lawsuit seeking review of the decision under the Administrative Procedure Act, 5 U.S.C. § 704. The district court granted NHTSA's motion for summary judgment, and InterModal now appeals.

## II.

NHTSA gave several reasons for denying InterModal's application for an exemption. Yet only one of them—that the air-brake system InterModal seeks to install in its trailers, the MSQR-5000, does not meet Standard 121's definition of an ABS—need concern us here. If the device fails to clear that threshold requirement, nothing else matters. For even if InterModal could satisfy the other statutory criteria for an exemption from the warning-light requirement, it still cannot market a trailer not equipped with an ABS—at least absent an exemption from the ABS definition itself (something InterModal has not sought). We review the district court's decision de novo, *see Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 498 (6th Cir. 2006), but we may set aside NHTSA's decision denying InterModal's exemption application only if it was arbitrary or capricious, *see* 5 U.S.C. § 706(2)(A); *Kroger Co. v. Reg'l Airport Auth.*, 286 F.3d 382, 387 (6th Cir. 2002). We must defer to the agency's interpretation of its own regulations unless the text is unambiguous or the agency's interpretation is "plainly erroneous or inconsistent with the regulation," *Ky.*

*Waterways Alliance v. Johnson*, 540 F.3d 466, 474–75 (6th Cir. 2008); *see Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), and that deference does not depend on the agency crystallizing its construction through formal rulemaking or adjudication, *see Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust*, 410 F.3d 304, 319 (6th Cir. 2005); *cf. Air Brake Sys.*, 357 F.3d at 644.

Judicial deference to the agency's actions in this case goes a long way to resolving this dispute. Standard 121 defines an ABS as

> a portion of a service brake system that automatically controls the degree of rotational wheel slip during braking by:
> (1) Sensing the rate of angular rotation of the wheels;
> (2) Transmitting signals regarding the rate of wheel angular rotation to one or more controlling devices which interpret those signals and generate responsive controlling output signals; and
> (3) Transmitting those controlling signals to one or more modulators which adjust brake actuating forces in response to those signals.

49 C.F.R. § 571.121 S4. As NHTSA has interpreted this provision of its regulation, the MSQR-5000 comes up short in meeting the regulation's requirements in two fundamental respects.

*First*, the agency found that the MSQR-5000 does not meet the requirement that it "automatically control[] the degree of rotational wheel slip during braking." *Id.* "Wheel slip," the agency explained, means "the proportional amount of wheel/tire skidding relative to the forward motion (velocity) of the vehicle." JA 64 (internal quotation marks omitted). How much, in other words, is the tire sliding over the road (instead of rotating and maintaining traction with the road) as a proportion of how fast the vehicle is traveling? According to NHTSA, this component of the regulation requires brakes to control the degree of wheel slip without any additional action by the driver. And the brake must be able to do so even when the wheel stops spinning entirely—that is, when the driver encounters "100 percent wheel slip," a condition the regulations call "wheel lockup," 49 C.F.R. § 571.121 S4.

NHTSA concluded that the MSQR-5000 fails to satisfy this requirement. The agency, to begin, doubted the engineering theory behind the brake's operation. The device's design starts from the premise that "wheel lockup occurs because of pressure spikes and pressure differentials inside the braking system," JA 67, which are caused by the brake shoe coming into contact with slight irregularities in the surface of the rotating brake drum. The idea behind the MSQR-5000 is to turn these problematic "pressure pulses" into the solution: According to InterModal, as the rotating wheel generates these pulses, the MSQR-5000 "generates responsive waves that dampen pressure increases." JA 69–70; *cf.* JA 79–81 (InterModal's expert describing the MSQR-5000's operation in greater detail).

Based on extensive testing of similar devices and based on consultation with outside experts, however, NHTSA came to doubt the real-world existence of the critical air-pressure pulses. But even if they are real, NHTSA concluded that they provide only a partial solution: Brakes that depend on them are powerless to respond to wheel lockup, since by definition a locked-up wheel has stopped rotating, and not every wheel has enough irregularities to produce the pulses. In addition, without the ability to vent air, the MSQR-5000 can modulate only small pressure pulses but cannot relieve more intense pressure spikes. When the agency subjected this system to real-world tests, moreover, both the MSQR-5000 and similar airbrake designs failed to prevent wheel lockup.

*Second*, NHTSA determined that the MSQR-5000 cannot "[s]ens[e] the rate of angular rotation of the wheels," which is what the regulation requires. 49 C.F.R. § 571.121 S4. As the agency interpreted this part of Standard 121, it means an ABS must be able to determine not merely *whether* a wheel is rotating but how *fast* it is spinning. To make that measurement, the MSQR-5000 depends once again on the controversial pressure pulses. But even if they exist, the pulses do not enable a brake to determine how fast a wheel is rotating: Because the MSQR-5000's only means of measuring speed depends on the frequency of pulses it detects, it cannot distinguish between a wheel with just a few irregularities rotating rapidly and a wheel with many irregularities turning slowly.

In resisting this agency determination, InterModal argues that all of this amounts to an agency attempt to amend its regulation without formal rulemaking. As InterModal correctly points out, an agency may not "under the guise of interpreting a regulation"

effectively create "a new regulation" out of an existing unambiguous rule. *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). It then argues that NHTSA did just that when it added two requirements to Standard 121's ABS definition that have no support in the regulation's text. By reading the performance requirement to require an ABS to "process[] information about the angular rotation of the wheels" as a means to "calculate the wheel slip," JA 71, the agency effectively "requires an ABS device to be computerized," Br. at 20. And by concluding that the MSQR-5000 cannot adequately "vent air from the brake chambers in order to reduce brake pressure," JA 71, the agency added a requirement that the regulation's language does not support.

We disagree on both fronts. For one thing, even if, as InterModal insists, NHTSA had attempted a stealth revision of its regulation, it would not warrant remanding this case to the agency because it would not affect the outcome. *Cf. NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion); *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338 (2d Cir. 2006). Aside from the computerization and air-venting requirements the agency allegedly added, Standard 121 still requires an ABS to prevent and react to wheel lockup, a performance standard NHTSA concluded the MSQR-5000 cannot meet. It is far from clear, at any rate, that NHTSA's reading in fact imposes these new requirements. The references in the agency's decision to "processing information" and "calculat[ing] . . . wheel slip," JA 71, do not add up to a computerization requirement. Read in context, "calculat[ion]" simply means accounting and compensating for the difference between the vehicle's speed and the rate of wheel rotation—something even non-electronic devices apparently can perform, *see* 60 Fed. Reg. 13,216, 13,263 (NHTSA Mar. 10, 1995). Likewise, in noting the MSQR-5000's inability to vent enough air to reduce brake pressure quickly, the agency did not announce a new across-the-board regulatory requirement but rather identified a reason InterModal's brake could not perform a critical function. Having failed to show that the agency erred, much less acted arbitrarily and capriciously, in concluding that the MSQR-5000 does not meet the threshold definition of an ABS, InterModal cannot prevail in seeking an exemption from other aspects of Standard 121's restrictions.

III.

For these reasons, we affirm.